| | |
|---|---|
| **KASSI GALYON,** | |
| Plaintiff, | |
| v. | CASE NO.: 3:19-cv-00514-CLC-DCP |
| **KENJO, INC.,** | JURY TRIAL DEMANDED |
| Defendant. | |

## FIRST AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Kassi Galyon ("Plaintiff" or "Ms. Galyon"), by and through her counsel of record, pursuant to FED. R. CIV. P. 15; and, for her First Amended Complaint against KenJo, Inc. ("Defendant" or "Defendant KenJo"), avers as follows:

### I.    PARTIES

1.    Plaintiff, Kassi Galyon, is a resident citizen of the State of Tennessee, County of Blount.

2.    KenJo, Inc., is a domestic for-profit corporation authorized to conduct business in the State of Tennessee and maintains its principal place of business in Alcoa, Tennessee. At all times material hereto, Defendant KenJo is and was engaged in the retail automotive fuels' industry. Defendant KenJo's registered agent is C W Carruthers. Service of process may be perfected at 325 Joule Street, Alcoa, Tennessee 37701.

### II.    JURISDICTION AND VENUE

3.    Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-2 herein, inclusive.

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this action is brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

5. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the remaining causes of action averred in the Complaint brought pursuant to Tenn. Code Ann. § 50-1-305, *et seq.*, and the Tennessee Human Rights Act ("THRA"), 4-21-101, *et seq.* Such claims are so related to the claim within the original jurisdiction of this Court that they form part of the same case or controversy.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in Blount County, Tennessee.

7. At all times material hereto, Defendant KenJo employed 50 or more employees.

### III. GENERAL ALLEGATIONS

8. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-7 herein, inclusive.

9. Ms. Galyon's employment with Defendant KenJo commenced in 2017.

10. Ms. Galyon was a retail clerk and certified trainer for Defendant KenJo.

11. At all times material to the averments set forth herein, Ms. Galyon's rate of pay with Defendant KenJo was Eight Dollars and 75/100 ($8.75) per hour.

12. At all times material to the averments set forth herein, Ms. Galyon worked at Defendant KenJo's Store #41.

13. At all times material to the averments set forth herein, Ms. Galyon was a breast-feeding mother to her infant child.

14. Upon returning from maternity leave, Ms. Galyon requested Defendant KenJo provide a private, sanitary area in the workplace in which to express breast milk.

15. Defendant KenJo initially agreed to permit Ms. Galyon to express breast milk in a private area of Defendant KenJo's office, which was outside the view of security cameras.

16. At all times material to the averments set forth herein, Elizabetha King ("King") was an assistant manager for Defendant KenJo at Store #41.

17. At all times material to the averments set forth herein, King had supervisory authority over Ms. Galyon on behalf of Defendant KenJo.

18. On or about October 10, 2019, Ms. Galyon brought Halloween decorations to Store #41. Ms. Galyon's infant child accompanied her.

19. While Ms. Galyon was at Store #41 on October 10, 2019, she asked King if she could go to the office to breastfeed her infant child.

20. King responded Defendant KenJo had two (2) trainees undergoing training in the office.

21. Rather than: (1) inquire of the trainees whether they would be uncomfortable if Ms. Galyon breastfed her infant child in their presence – when, in fact, neither female trainee opposed Ms. Galyon's request; or, (2) instruct the trainees to temporarily halt their training and perform other tasks while Ms. Galyon breastfed her infant child, King instructed Ms. Galyon to breastfeed her infant child in Defendant KenJo's bathroom.

22. Ms. Galyon became very upset and refused to breastfeed her infant child in such unsanitary conditions, as instructed by Defendant KenJo.

23. Rather, Ms. Galyon responded to King that she (Ms. Galyon) would rather breastfeed her infant child in her vehicle than in the company's bathroom.

24. Upon information and belief, King became hostile toward Ms. Galyon as a result of Ms. Galyon protesting breastfeeding her infant child in Defendant KenJo's bathroom.

25. The following day (October 11, 2019), was a regularly-scheduled work shift for Ms. Galyon. She inquired as to whether King would allow her to express (pump) breast milk in Defendant KenJo's office.

26. King again admonished Ms. Galyon she could not do so, stating that there was one (1) trainee in the office. Ms. Galyon would have to pump breast milk in Defendant KenJo's bathroom.

27. Ms. Galyon protested and became extremely upset at having to express breast milk in the bathroom.

3
Case 3:19-cv-00514-CLC-DCP   Document 8   Filed 01/21/20   Page 3 of 8   PageID #: 16

28. Despite her trepidation, Ms. Galyon attempted to pump breast milk in the bathroom.

29. When assembling the breast pump in the bathroom, Ms. Galyon realized she was missing a necessary piece in order for the pump to function properly.

30. Already upset due to Defendant KenJo forcing her to express breast milk in the bathroom, Ms. Galyon emotionally broke down and started crying.

31. Upon learning she was missing a necessary piece of the pump, Ms. Galyon emerged from the bathroom (still crying) and told King of the situation; and, she would have to go home briefly to retrieve the missing piece.

32. King angrily responded that, if Ms. Galyon needed to go home to retrieve a piece of the breast pump, she could "just stay home!"

33. Ms. Galyon followed King's directive; and, as a result, lost three and one-half (3.5) hours of work for October 11, 2019.

34. Later, Ms. Galyon sent text messages protesting being instructed twice to express breast milk in Defendant KenJo's bathroom, stating that the same was disgusting and humiliating. King retorted, "I honestly don't see where it matters where you pump as long as it gets done."

35. Ms. Galyon replied that she could no longer work for Defendant KenJo – as a result of her reasonable fear that Defendant KenJo, generally, and King, specifically, would continue to illegally require her to express breast milk in the bathroom – and she was resigning her employment.

36. King vindictively replied if that is how Ms. Galyon was going to be about the issue, King would rather Ms. Galyon not work for Defendant KenJo.

37. Despite Ms. Galyon resigning her employment, Defendant KenJo illegally failed to provide Ms. Galyon a Notice of Separation within 24 hours of her resignation (or at all).

## IV. CAUSES OF ACTION

### a. Interference and Retaliation

(*Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.*)

38. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-37 herein, inclusive.

39. At all times material to the averments set forth herein, Plaintiff was an "employee", as that term is defined by the FLSA.

40. At all times material to the averments set forth herein, Defendant was an "employer" as that term is defined by the FLSA.

41. The FLSA provides in pertinent part:

(r) Reasonable break time for nursing mothers

    (1) An **employer shall provide**—

        (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has the need to express the milk; and

        (B) **a place, other than a bathroom**, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 207(r)(1)(A) and (B) (emphasis added).

42. As averred more fully herein, Defendant failed to provide Plaintiff "a place, other than a bathroom . . . to express breast milk." *Id.* at § 207(r)(1)(B).

43. The foregoing averred conduct unlawfully interfered with Plaintiff's rights pursuant to the FLSA.

44. In fact, Defendant affirmatively instructed Plaintiff to express breast milk in Defendant's bathroom, over Plaintiff's objections.

45. The FLSA further provides in pertinent part:

(a) . . . [I]t shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to [the FLSA] . . ..

29 U.S.C. § 215(a)(3).

46. Defendant's unlawful actions in requiring Plaintiff to miss the remainder of her October 11, 2019 shift and then advising Plaintiff that, if she insisted on protesting being required to express breast milk in Defendant's bathroom, Defendant would prefer not to employ Plaintiff, constitutes FLSA retaliation, including constructive discharge.

47. As a direct and proximate result of Defendant's violations of the FLSA, Plaintiff has suffered injuries and damages, including wage theft, lost pay and benefits, and liquidated damages, as averred more fully herein.

b.  <u>Discrimination, Interference, and Retaliation</u>

(*Tenn. Code Ann. § 50-1-305, et seq. and
Tennessee Human Rights Act ("THRA", Tenn. Code Ann. § 4-21-101 et seq.*)

48. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-47 herein, inclusive.

49. Tenn. Code Ann. § 50-1-305 provides in pertinent part:

(b) An employer shall provide reasonable unpaid break time each day to an employee who needs to express breast milk for that employee's infant child. The break time shall, if possible, run concurrently with any break time already provided to the employee. An employer shall not be required to provide break time under this section if to do so would unduly disrupt the operations of the employer.

(c) The employer **shall make reasonable efforts to provide a room** or other location in close proximity to the work area, **other than a toilet stall**, where the employee can express breast milk in privacy. . . .

*Id.* at §§ (b) and (c) (emphasis added).

50. Tenn. Code Ann. § 4-21-401 provides in pertinent part:

(a) It is a discriminatory practice for an employer to:

(1) . . . **discharge** any person **or** otherwise to **discriminate** against an individual with respect to compensation, terms, conditions or privileges of employment **because of such individual's** . . . **sex** . . ..

*Id.* at § (a)(1) (emphasis added).

51. The foregoing conduct violates Tennessee statutory law, including the THRA.

52. As a direct and proximate result of Defendant's violations of Tennessee statutory law, including the THRA, Plaintiff has suffered injuries and damages as averred more fully herein.

## V. DAMAGES

53. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-52 herein, inclusive.

54. As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged herein, Plaintiff has suffered damages in an amount, and according to proof, including, but without limitation, lost wages, loss of benefits, lost interest on wages and benefits, liquidated damages, actual monetary loss, inconvenience, embarrassment, humiliation, loss of lifetime earning capacity, and other incidental and/or consequential damages.

55. Plaintiff is further entitled to, and seeks recovery of, reasonable attorneys' fees and costs incurred pursuant to the FLSA and/or THRA.

56. Plaintiff further seeks an award of pre- and post-judgment interest as permitted by law.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff sues Defendant for damages, lost wages, liquidated damages, and compensatory damages, directly and proximately resulting from Defendant's violations of the law as averred more fully herein in an amount not less than **ONE HUNDRED FIFTY THOUSAND DOLLARS AND 00/100 ($150,000.00)**.

**WHEREFORE**, Plaintiff respectfully demands payment of her reasonable attorneys' fees and costs incurred in bringing this action pursuant to the FLSA and THRA.

WHEREFORE, Plaintiff respectfully demands a jury be empaneled to hear this cause.

WHEREFORE, Plaintiff respectfully requests this Court award such other and further relief as may be appropriate and assess the costs of this cause against the Defendant.

**Respectfully submitted** this 21th day of January, 2020.

        **KASSI GALYON**

        By: /s/ James Friauf
        James W. Friauf (#027238)
        LAW OFFICE OF JAMES W. FRIAUF, PLLC
        9724 Kingston Pike
        Suite 104
        Knoxville, Tennessee 37922
        Tele: (865) 236-0347
        Fax: (865) 512-9174
        Email: james@friauflaw.com
        Our File No.: 19-134-EPL

        *Attorney for Plaintiff, Kassi Galyon*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record the Court's CM/ECF System this 21st day of January 2020.

        /s/ James Friauf
        James W. Friauf

8
Case 3:19-cv-00514-CLC-DCP   Document 8   Filed 01/21/20   Page 8 of 8   PageID #: 21